IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINE GIBBS,<br>    Plaintiff | :<br>:<br>:    No. 1:24-cv-00976 |
| v. | :<br>:    (Judge Kane) |
| PRIME CARE MEDICAL,<br>    Defendant | :<br>: |

## MEMORANDUM

Before the Court are pro se Plaintiff's application for leave to proceed <u>in forma pauperis</u> and civil rights complaint in which she raises a claim under 42 U.S.C. § 1983 against a county jail's medical provider for allegedly constitutionally deficient medical care during the time she has been incarcerated as a pretrial detainee at the jail. For the reasons set forth below, the Court will grant the <u>in forma pauperis</u> application, dismiss the complaint without prejudice for the failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B), and provide Plaintiff with leave to file an amended complaint.

**I.    BACKGROUND**

Pro se Plaintiff Christine Gibbs ("Gibbs"), a pretrial detainee currently incarcerated in the Adams County Adult Correctional Complex ("ACACC"), commenced this action by filing a complaint against Defendant Prime Care Medical ("PrimeCare"), which the Clerk of Court docketed on June 13, 2024. (Doc. No. 1.) In the complaint, Gibbs alleges that prior to July 27, 2023, she experienced pain in her knees and Achilles tendon while she was incarcerated at the Dauphin County Prison ("DCP"). (<u>Id.</u> at 3.) On July 27, 2023, Gibbs transferred from the DCP to the ACACC. (<u>Id.</u>) Since the time of this transfer, Gibbs alleges that she has been unable to receive proper medical treatment for her knees and Achilles tendon while at ACACC, despite her "having a lot of trouble walking [and] standing up from a [seated] position." <u>See</u> (<u>id.</u> at 3, 4).

She avers that when she requests medical treatment for her knees and Achilles tendon, she keeps being told that her requests for care have been "tasked to provider." See (id. at 3; Doc. No. 1-1 at 1, 2, 5, 7). Yet, she has never seen this "provider." See (Doc. No. 1 at 3). Instead, the only medical person she has seen is a nurse, although apparently the nurse "placed [her] on a drug that did not help" with her pain. See (id.).

Based on these allegations, Gibbs asserts a claim under 42 U.S.C. § 1983 against PrimeCare for its deliberate indifference to her serious medical needs in violation of the Fourteenth Amendment to the United States Constitution.[1] (Id. at 1, 4.) For relief, she "would like the Court to order . . . Prime Care to get [her] to a specialist for [her] gel shots," as well as award monetary damages for her pain and suffering. See (id. at 4).

When filing her complaint, Gibbs failed to either remit the fees to commence this case or apply for leave to proceed in forma pauperis. As such, an Administrative Order issued on June 13, 2024, requiring her to either remit the fees or file an application for leave to proceed in forma pauperis within thirty (30) days or risk dismissal of this action. (Doc. No. 3.) Gibbs timely complied with this Order by submitting an application for leave to proceed in forma pauperis ("IFP Application"), which was docketed on July 2, 2024. (Doc. No. 5.) Unfortunately, the IFP Application was not accompanied by Gibbs's certified prisoner trust fund account statement, so another Administrative Order issued on July 10, 2024, directing the Warden of ACACC to provide Gibbs's certified prisoner trust fund account statement to the Court within fifteen (15) days. (Doc. No. 6.) The Clerk of Court docketed Gibbs's account statement on July 18, 2024.

---

[1] Although Gibbs appears to reference the Eighth Amendment prohibition on cruel and unusual punishment in her complaint, as explained below, the Fourteenth Amendment applies to her deliberate indifference claim against PrimeCare because she alleges that she is a pretrial detainee.

(Doc. No. 7.) The Court will now proceed to address the IFP Application and screen the complaint as required by Section 1915(e)(2)(B).

## II.    LEGAL STANDARDS

### A.    Applications for Leave to Proceed in Forma Pauperis

Under 28 U.S.C. § 1915(a)(1), the Court may allow a plaintiff to commence a civil case "without prepayment of fees or security therefor," if the plaintiff "submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor."[2]  See id.  This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." Neitzke v. Williams, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).  Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. [Deutsch v. United States, 67 F.3d 1080, 1084 (3d Cir. 1995)].  Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in forma pauperis by filing in good faith an affidavit stating, among other things, that [they are] unable to pay the costs of the lawsuit.  Neitzke, 490 U.S. at 324, 109 S.Ct. 1827.

See Douris, 293 F. App'x at 131–32 (footnote omitted).

A litigant can show that they are unable to pay the costs of the lawsuit "based on a showing of indigence."  See Deutsch, 67 F.3d at 1084 n.5.  The Third Circuit Court of Appeals has not defined what it means to be indigent; nevertheless, "[a] plaintiff need not 'be absolutely destitute to enjoy the benefit of the statute.'"  See Mauro v. N.J. Supreme Ct. Case No. 56,900, 238 F. App'x 791, 793 (3d Cir. 2007) (unpublished) (quoting Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339 (1948)).  Some district courts have explained that all a litigant needs to

---

[2]  While the Court recognizes that Gibbs is a pretrial detainee, the Court notes that "[t]he reference to prisoners in § 1915(a)(1) appears to be a mistake.  In forma pauperis status is afforded to all indigent persons, not just prisoners."  See Douris v. Middletown Twp., 293 F. App'x 130, 132 n.1 (3d Cir. 2008) (unpublished).

3

show is that because of their poverty, they cannot afford to pay for the costs of the litigation and provide themselves with the necessities of life. See, e.g., Rewolinski v. Morgan, 896 F. Supp. 879, 880 (E.D. Wis. 1995) ("An affidavit demonstrating that the petitioner cannot, because of his poverty, provide himself and any dependents with the necessities of life is sufficient."); Jones v. State, 893 F. Supp. 643, 646 (E.D. Tex. 1995) ("An affidavit to proceed in forma pauperis is sufficient if it states that one cannot, because of poverty, afford to pay for the costs of litigation and still provide for him- or herself and any dependents.").

  **B.**  **The Court's Screening of the Complaint Under Section 1915(e)(2)(B)**

If a district court grants a plaintiff leave to proceed in forma pauperis, the district court must then examine whether the plaintiff's complaint, inter alia, fails to state a claim upon which relief can be granted. See 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- ... (B) the action or appeal—(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief"). In reviewing legal claims under Section 1915(e)(2)(B)(ii) to determine whether a plaintiff has failed to state a claim for relief, the district court applies the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). To avoid dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" in the complaint to show that their claims are facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged

– but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. See id.; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" is insufficient. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

In addition, in the specific context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Higgs v. Att'y Gen., 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a pro se litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)). Therefore, a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106). This means the court must "remain flexible, especially 'when dealing with imprisoned pro se litigants . . . .'" See Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244–45 (3d Cir. 2013))).

Additionally, when construing a pro se complaint, the court will "apply the relevant legal principle even when the complaint has failed to name it." See Mala, 704 F.3d at 244. However, pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" See Vogt, 8 F.4th at 185 (quoting Mala, 704 F.3d at 245).

### C. Section 1983

Section 1983 is the statutory vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state and municipal officials. See 42 U.S.C. § 1983. This statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

See id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002)). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

## III. DISCUSSION

### A. The IFP Application

After reviewing the IFP Application as well as Gibbs's certified prison trust fund account statement, it appears that Gibbs is unable to pre-pay the costs of this civil rights action. Therefore, the Court will grant the IFP Application and allow her to proceed in forma pauperis.[3]

---

[3] However, because Gibbs is a prisoner, she is advised that she will be obligated to pay the filing fee in installments in accordance with the PLRA, regardless of the outcome of this action. See 28 U.S.C. § 1915(b).

6

**B.     Screening of the Complaint**

As indicated above, Gibbs is attempting to assert a Section 1983 claim for deliberate indifference to her serious medical needs against PrimeCare.  Because Gibbs alleges that she is a pretrial detainee (Doc. No. 1 at 2), the Fourteenth Amendment, not the Eighth Amendment, applies to her claim.  See Thomas v City of Harrisburg, 88 F.4th 275, 281 n.23 (3d Cir. 2023) (explaining that although "the Eighth Amendment protects a prisoner's serious medical needs," the Fourteenth Amendment applied to plaintiff pretrial detainee's deliberate indifference to serious medical needs claim (citing Estelle, 429 U.S. at 103–04; Natale v. Camden County Corr. Facility, 318 F.3d 575, 581–82 (3d Cir. 2003))).  In addressing this claim under the Fourteenth Amendment, the Court "appl[ies] the same standard used to evaluate [deliberate indifference] claims brought under the Eighth Amendment."  See id. (citing Natale, 318 F.3d at 581–82); see also Moore v. Luffey, 767 F. App'x 335, 340 & n.2 (3d Cir. 2019) (unpublished) (evaluating deliberate indifference to serious medical needs claim by pretrial detainee under Eighth Amendment standard, declining to address whether new standard applies to these types of claims by pretrial detainees, and discussing similarity of standards under Eighth and Fourteenth Amendments).

For Gibbs to state a plausible constitutional claim based on the failure to provide adequate medical treatment, she must allege facts indicating that prison officials were deliberately indifferent to her serious medical needs.  See Farmer v. Brennan, 511 U.S. 825, 835 (1994).  Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation.  See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw

7

the inference." See Farmer, 511 U.S. at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks omitted). A plaintiff properly alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." See Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991).

In this case, Gibbs alleges that PrimeCare is the medical provider for the ACACC and has failed to properly treat her medical issues. Because PrimeCare, a non-government entity, allegedly provides medical services at ACACC, it is considered to act under color of state law for purposes of section 1983. See Curdo v. County of Chester, No. 24-cv-00132, 2024 WL 3445005, at *13 n.140 (E.D. Pa. July 17, 2024) ("Private entities, like PrimeCare Medical, Inc., contracting with municipalities, like [Chester] County, to provide services to prison inmates are state actors for purposes of section 1983 liability." (citing West, 487 U.S. at 53–58)); Roth v. PrimeCare, No. 18-cv-05010, 2019 WL 2745789, at *2 n.12 (E.D. Pa. June 27, 2019) ("The PrimeCare Defendants do not contest they are state actors, conceding they contract with Montgomery County to provide medical services to inmates incarcerated at the Montgomery County prison."); see also Natale, 318 F.3d at 583–84 (acknowledging that entity contracted to perform medical services for county jail is state actor for purposes of Section 1983).

Assuming that private healthcare companies who contract with county jails to provide medical services to incarcerated individuals constitute "persons" amenable to suit under Section

8

1983,[4] they "cannot be held responsible for the acts of [their] employees under a theory of respondeat superior or vicarious liability." See Natale, 318 F.3d at 583. Instead, a plaintiff must allege that the private healthcare company violated their constitutional rights because of a custom or policy that it adopted. See Cephas v. George W. Hill Corr. Facility, No. 09-cv-06014, 2010 WL 2854149, at *2 (E.D. Pa. July 20, 2010) (explaining that pro se prisoner plaintiff seeking to assert claim against private healthcare company providing medical services to county jail must allege that institutional policy or custom caused violation of plaintiff's rights; dismissing complaint because it did not contain any such allegations); see also Natale, 318 F.3d at 583 (analyzing section 1983 claim against private health care provider under municipal liability standard established in Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978)).

---

[4] Although PrimeCare acts under color of state law when it provides contracted medical services to a county jail, other Judges in this District have nonetheless concluded that medical providers like PrimeCare are not proper defendants under Section 1983 because they are not "person[s]" subject to Section 1983 liability. See, e.g., Kenyon v. Gutierrez, No. 24-cv-00426, 2024 WL 3605962, at *8 & n.93 (M.D. Pa. July 30, 2024) (Brann, C.J.) ("Only 'persons' are subject to suit under Section 1983, and entities such as prisons, medical departments, or private medical companies generally do not qualify as 'persons' for purposes of Section 1983." (footnote omitted)); Ealy v. Schell, No. 24-cv-00126, 2024 WL 1533666, at *4 (M.D. Pa. Apr. 9, 2024) (Munley, J.) (determining that PrimeCare, which was providing medical services to a county jail, was not a "person" amenable to suit under Section 1983); Hasara v. Buchannon, No. 22-cv-01149, 2023 WL 35326, at *1 n.1 (M.D. Pa. Jan. 4, 2023) (Rambo, J.) (noting that pro se plaintiff sued PrimeCare, and pointing out that PrimeCare "was dismissed pursuant to 28 U.S.C. § 1915A(b)(1) because it is not a 'person' under Section 1983"); Stankowski v. Farley, 487 F. Supp. 2d 543, 554 (M.D. Pa. 2007) (Munley, J.) (concluding PrimeCare was not a "person" subject to suit under Section 1983). This conclusion appears to be based on the United States Supreme Court's decision holding that state agencies are not "persons" subject to suit under Section 1983, see Will v. Mich. Dep't of State Police, 491 U.S. 58, 64–65, 71 (1989), and Third Circuit decisions concluding that state prison medical departments and county jails are also not "persons" amenable to suit under Section 1983. See, e.g., Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973) (concluding that New Jersey Prison Medical Department, a state agency, "may not be sued under [Section] 1983 since it is not a person); Lenhart v. Pennsylvania, 528 F. App'x 111, 114 (3d Cir. 2013) (unpublished) ("[A]s the District Court noted, Westmoreland County Prison is not a person capable of being sued within the meaning of § 1983." (citations omitted)).

A "policy" arises when a decision-maker possessing final authority issues an official proclamation, policy, or edict. See Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Est. of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (quoting Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiff's] injury." See id. (internal quotation marks and alterations omitted). Regardless of whether a plaintiff is seeking to impose municipal liability for a policy or a custom, "it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." See Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990); see also Bielevicz, 915 F.2d at 850 (explaining that in both methods to obtain liability under Monell, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom"). The plaintiff "must [also] identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the applicable pleading standard. See McTernan v. City of York, PA, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted).

> In addition,
>
> [t]here are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." [Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 417 (1997)] (Souter, J., dissenting). The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Id. Finally, a policy or custom may also exist where

10

> "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice is likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" Id. at 417–18 (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 390[ (1989)]); see also Berg[ v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000)] (holding that plaintiff must "demonstrat[e] that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences").

See Natale, 318 F.3d at 584 (third alteration in original) (internal footnote omitted).

Here, Gibbs does not allege an unconstitutional policy or custom by PrimeCare that would potentially establish a plausible Section 1983 suit against it. Therefore, the Court will dismiss her Section 1983 deliberate indifference to serious medical needs claim against PrimeCare for the failure to state a claim under Section 1915(e)(2)(B)(ii).

    **C.**    **Leave to Amend**

Having determined that Gibbs's sole claim against PrimeCare is subject to dismissal, the Court must determine whether to grant her leave to file an amended complaint. Courts should generally give leave to amend but may dismiss a complaint with prejudice where leave to amend would be inequitable or futile. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); see also Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable or futile."). "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). Based on the analysis above, the Court cannot

11

state that any amended complaint against PrimeCare would be futile. Therefore, the Court will grant Gibbs leave to file an amended complaint as to her Fourteenth Amendment claim against PrimeCare.

IV.     **CONCLUSION**

For the reasons discussed above, the Court will grant the IFP Application and dismiss the complaint without prejudice to Gibbs filing an amended complaint. An appropriate Order follows.[5]

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

[5] The Order will provide additional information to Gibbs about the filing of an amended complaint.